**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAIME J. TORRES,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN CIOLLI,<br><br>    Respondent. | Case No.: 1:20-cv-00310-JLT (HC)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>[THIRTY DAY OBJECTION DEADLINE] |

    Petitioner is currently in the custody of the Bureau of Prisons ("BOP") at the United States Penitentiary in Atwater, California. He challenges a disciplinary hearing in which he was found guilty for violating BOP Code 113 for possession of illicit drugs. Petitioner claims certain time limits were not met with respect to the disciplinary proceeding and argues for further testing of the drugs. Because Petitioner fails to state a cognizable federal claim for relief, the Court will recommend the petition be DENIED.

**BACKGROUND**[1]

    On March 20, 2015, in the District of Massachusetts, Petitioner was charged with felon in possession of a firearm and conspiracy to distribute heroin, each a felony in violation of federal law. See 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841, 846; see also United States v. Torres, Case No. 1:15-

---

[1] This information is derived from the response and appendix attached to the response. (Docs. 11, 11-1.)

1

cr-10262-GAO-1 (D. Mass. Dec. 9, 2016) (Docs. 1, 27). On January 19, 2016, Petitioner pled guilty. Id. (Doc. 29). On December 8, 2016, Petitioner's sentencing hearing was held. Id. (Docs. 47, 48). At that time, the District of Massachusetts district court sentenced Petitioner to 94-months federal custody. Id.; (Doc. 11-1 at 3.) According to BOP, assuming numerous factors, Petitioner has a February 13, 2022 projected release date. (Doc. 11-1 at 3.)

On October 12, 2018, while Petitioner was serving his 94-month sentence in Federal Correctional Institution Schuylkill (FCI-Schuylkill) located in Minersville, Pennsylvania, a search was conducted of Petitioner's property, including his phone book. (Doc. 11-1 at 20-21, 27-28.) Petitioner possessed a treated gridline paper (saturated with substance later determined to be amphetamine). Id. Since illicit drug dosages are commonly ingested via treated fiber tabs or paper pieces, on October 15, 2018, law enforcement submitted Petitioner's treated gridline paper for illicit drug presence testing utilizing a "Narcotics Identification Kit" (NIK A). Id. This illicit drug presence test yielded a "positive" illicit drug presence result (by orange color). Id. The positive result from test NIK A was followed up with further testing for illicit drug identification. See id. The further test, NIK U, was positive for amphetamine (producing magenta color). Id. Petitioner later confessed (and herein does not dispute his confession) ownership of his saturated gridline paper (nor does he dispute his knowledge of "the drugs [saturated gridline paper] in my phone book"). (Doc. 11-1 at 27.) Immediately after the positive test result, on October 15, 2018, Petitioner was advised of his rights and issued Incident Report 3180932 for possession of illicit drugs in violation BOP Code 113. (Doc. 11-1 at 20-21.)

On October 16, 2018, at the unit discipline hearing, Petitioner was advised regarding his formal discipline hearing. (Doc. 11-1 at 23.) After rights advisement, Petitioner then informed unit staff that for his discipline hearing, Petitioner declined staff counsel and declined witnesses. Id. Petitioner attested to his rights advisement and declination of rights by indicating such and signing the Notice of Discipline Hearing. (Doc. 11-1 at 16-17, 23, 25.) Petitioner was provided and completed the Inmate Rights at Disciplinary Hearing form. (Doc. 11-1 at 23, 25.) Petitioner was also provided and completed the Notice of Disciplinary Hearing Before the DHO form dated October 16, 2018, which afforded him the opportunity to choose a staff representative, to present documentary evidence, and to

1 call witnesses; Petitioner declined. Id.; (see also Doc. 11-1 at 16-17.)

2 On October 30, 2018, Petitioner's disciplinary hearing was conducted. (Doc. 11-1 at 17.) At the
3 hearing, Petitioner stated he understood his rights and he was ready to proceed. Id. Petitioner
4 acknowledged the incident report and stated its description of facts was "accurate." Id. Petitioner was
5 offered further opportunity to make a statement. Petitioner confessed "I had the drugs in my phone
6 book," and "I'm guilty for what I had in my phone book." Id.

7 On October 30, 2018, the DHO reviewed the documentary evidence including the incident
8 report, supporting memoranda, officer documentation that Petitioner physically possessed the
9 saturated gridline paper later determined to contain the illicit drugs, evidence photos, NIK certification
10 results, NIK test images/photos indicating positive illicit drug color change, and Petitioner's
11 confession. (Doc. 11-1 at 27-28.) The DHO found Petitioner committed the Code 113 violation as
12 charged. Id. The DHO recounted the evidence relied on to support the findings, including the 2 NIK
13 positive illicit drug presence results (from 2 different NIK test kits). Id. The DHO pointed out that
14 Petitioner took responsibility for the illicit drugs on Petitioner's own gridline paper. Id. Against this
15 background, the DHO concluded the greater weight of the evidence supported the BOP Code 113
16 violation. See id. Due to the seriousness of a BOP Code 113 offense (illicit drugs in a prison facility),
17 Petitioner was sanctioned 20 days Disciplinary Segregation, 41 days loss of good time credit, and 6
18 months loss of privileges. (Doc. 11-1 at 28.) According to Respondent, Petitioner, having timely
19 proceeded through all levels of appeal, has exhausted administrative review. (Doc. 11 at 3; Doc. 11-1
20 at 4.)

21 **DISCUSSION**

22 A.      Jurisdiction

23 Writ of habeas corpus relief extends to a person in custody under the authority of the United
24 States. See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or
25 constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C.
26 § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must
27 bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g., Brown v. United States,
28 610 F.2d 672, 677 (9th Cir. 1990); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley

v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole).

Petitioner challenges the execution of his sentence.  Therefore, the Court has jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

B.   Venue

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  Brown, 610 F.2d at 677.  Petitioner is in the custody of the Bureau of Prisons at USP-Atwater, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a); 2241(d).  Therefore, venue is proper in this Court.

C.   Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies.  Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." Id.  Respondent reports that Petitioner has exhausted his administrative remedies. (Doc. 1 at 2-3; Doc. 11 at 3; Doc. 11-1 at 4.)

///

D.     Review of Petition

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-455 (1984)).

In the context of prison disciplinary proceedings, due process requires that the prisoner receive the following procedural guarantees: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. Petitioner does not dispute that he received all of the above procedural due process guarantees.

Nevertheless, Petitioner complains that certain BOP time regulations were not met.  Petitioner specifically complains that the incident report was not delivered in the proper time frame, claiming violation of the BOP Inmate Discipline Program Statement 5270.09. (Doc. 6 at 6.) However, as set forth by Respondent, there was no violation of the requirement that the incident report be delivered in the proper time frame. (Doc. 11 at 3-4.) The discipline process starts when staff become aware of an inmate committing a prohibited act. (Doc. 11 at 4, citing 28 C.F.R. § 541.5(a).) Specifically, on October 12, 2018, Petitioner was the subject of a search where his saturated gridline paper was found. (Doc. 11 at 4; Doc. 11-1 at 20.) Respondent contends that "[b]eing in possession of paper is not, in itself, a prohibited act as outlined in 28 C.F.R. § 541.3, Table 1," and on October 12, 2018, BOP was not aware that Petitioner had committed any prohibited act. (Doc. 11 at 4.) Then on October 15, 2018, special investigative supervisor support technician, Officer D. Trojan, who is certified to conduct NIK testing, after conducting successive tests, determined Petitioner's gridline paper contained illicit drugs. (Doc. 11 at 4; Doc. 11-1 at 20, 27-28.) Respondent alleges that this is the point BOP became aware of

Petitioner's violation of a prohibited act, specifically possession of illicit drugs, and began the discipline process. (Doc. 11 at 4.) Officer D. Trojan wrote Incident Report 3180932 on October 15, 2018, which Respondent contends was timely in accord with the BOP Inmate Discipline Program Statement 5270.09, and was delivered to Petitioner on the same date. (Doc. 11 at 4; Doc. 11-1 at 20, 27-28.)

As noted above, however, the BOP regulation is not one of the due process guarantees. Due process does not require that the report be given to the inmate within 24 hours of it being written. Rather, due process requires that the inmate be given 24 hours advance written notice of the charges prior to the disciplinary hearing. It is undisputed that this was done in this case. (See id.)

Petitioner also argues for further testing. (Doc. 6 at 6-7.) According to NIK A and NIK U tests, illicit drugs were located on a belonging (saturated gridline paper) in Petitioner's possession. (Doc. 11 at 5; Doc. 11-1 at 20-21, 27-28.) Petitioner does not dispute the results of the NIK tests (change of color indicating presence of illicit drug). (See Doc. 6 at 6-7.) He does not dispute the color change may properly indicate possession of illicit drugs, instead, Petitioner's complaint is merely that he wants more testing. (See id.) However, as Respondent contends, such a complaint does not undermine the "some evidence" supporting the DHO finding. (Doc. 11 at 5.) Respondent notes that "BOP Code 113 does not require any number tests, type of test, purity, composition, cut levels, and nor does the 'some evidence' requirement." Id.

Additionally, Petitioner's suggestion that he was not given the proper time to appeal is without merit. (See Doc. 6 at 7.) Petitioner was advised by DHO report, in section VIII, Appeal Rights, of his right to appeal the action of the DHO within 20 calendar days under the Administrative Remedy Procedure. (Doc. 11-1 at 28.) In accordance with Bureau Administrative Remedy Policy, 28 C.F.R § 542.14(d)(2), Petitioner appealed the decision of the Discipline Hearing Officer directly to the appropriate Regional Office, and when he received the denial at that level, appealed that decision to the Central Office. (Doc. 11-1 at 2-4.) An appeal to the General Counsel in the Central Office is the final administrative appeal. (Doc. 11 at 6, citing 28 C.F.R § 542.15(a).) As the Central Office denied Petitioner's appeal on the merits, Respondent states, Petitioner received a full and fair opportunity to be heard within the administrative remedy process. (Doc. 11 at 6.)

For the foregoing reasons, the Court finds that Petitioner fails to demonstrate that his due process rights were violated. Wolff, 418 U.S. at 564.  The petition should be denied.

**ORDER**

The Court DIRECTS the Clerk of Court to assign a district judge to the case.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy of this Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 5, 2020**                    **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE